UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL T. SWOPE,                          )
                          Petitioner,   )
          v.                            )          Case No. 05-2301 (RCL)
                                        )
UNITED STATES DEPARTMENT                )
OF JUSTICE, et al.                      )
                          Respondent.   )

_____

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, defendant United States Department of Justice respectfully

moves for summary judgment. As grounds for this motion, defendant asserts that there are no

genuine issues of material fact and that it is entitled to judgment as a matter of law.[1] A

---

[1] Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

memorandum of points and authorities, a statement of genuine issues of material fact not in dispute, and a proposed order granting the relief sought are attached hereto.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C..  BAR #171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARL T. SWOPE, | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 05-2301 (RCL) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, et al. | ) | |
| Respondent. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Federal Bureau of Prisons (BOP), by its undersigned attorneys, submits the following Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

### INTRODUCTION

The plaintiff is an inmate who was confined at the Medical Center for Federal Prisoners in Springfield, Missouri.   Complaint Ex. 3.

The plaintiff has filed this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and the Privacy Act (PA), 5 U.S.C. § 552a.  See plaintiff's complaint.  The plaintiff seeks copies of recordings and transcripts of recordings of all of his telephone conversations at two telephone numbers with Dr. Bernard Wechsler and  Lucia, Vincent, Olympia, and Carmella Esposito.

### STATEMENT OF FACTS

On May 9, 2005, the plaintiff filed a FOIA request with the BOP dated May 1, 2005.  In this request, the plaintiff stated:

> I am requesting the following information under the FOIA/PA provision:
> Copies of all telephone conversation(s) recorded by the SIS Department here at the Medical Center for Federal Prisoners – 1900 West Sunshine, Springfield, Missouri 65807.
> The following is provided for better processing of this request:
> I want copies of transcribed conversation to the following people: Dr. Bernard

1

Wechsler, M.D. 7606 Seventh Ave., Brooklyn, NY 11209 (732) 441-0230

Lucia, Vincent, Olympia, and Carmella Esposito, 67 East 77th Street, New York, New York 10021 (212) 744-6324..

Kosiak Dec. at ¶ 4.

MCFP Springfield conducted a search for the requested conversations on their Telephone Activity Record System by doing a Telephone Number Usage Search using plaintiff's register number and the telephone numbers specified in the FOIA request. Kosiak Dec. at ¶¶5-6. Forty-five (45) calls pertaining to telephone numbers (732) 441-0230 and (212) 744-6324 between October 2004 and April 2005 were found. Kosiak Declaration at ¶7 and attachment C.

By letter dated May 31, 2005, the plaintiff was advised that his access to the requested materials was denied under Exemption (b)(7)(A) and (b)(7)(E) of FOIA. Kosiak Dec. at ¶11 and attachment D.[1] The plaintiff also was advised that if he was dissatisfied with the response, he could appeal to the Office of Information and Privacy (OIP). Kosiak Dec. at attachment D.

The plaintiff appealed the BOP's decision, and OIP assigned the appeal number 05-2071. Kosiak Declaration at ¶ 12 and attachment E.

By a decision letter dated September 19, 2005, OIP advised the plaintiff that the withholding of the requested records under 5 U.S.C. § 552 (b)(7)(A) -- which pertains to records or information compiled for law enforcement purposes, the release which could reasonably be expected to interfere with enforcement proceedings-- was no longer appropriate. Kosiak Declaration at ¶13.[2] However, OIP determined it was appropriate to withhold portions of the recorded conversations that contain statements of a third party pursuant to 5 U.S.C. § 552(b)(7)(C). Kosiak Dec. at Attachment F. Regarding plaintiff's portion of the taped conversations, it was determined that they were exempt from disclosure because they could not be segregated out because "all portions are inextricably intertwined and would invade the privacy of third parties." *Id.* The plaintiff also was advised that

_____

[1]    The plaintiff was under investigation at MCFP Springfield for violations concerning mail and telephone usage and his calls had been "locked," that is marked for preservation, during the investigation. Kosiak Dec. at ¶7.

[2]    The investigation into the plaintiff's actions regarding mail and telephone usage at MCFP Springfield had concluded. *Kosiak Dec.* at ¶ 13.

2

if dissatisfied with OIP's action on his appeal, the plaintiff could seek judicial review in accordance with 5 U.S.C.§ 552(a)(4)(B).  *Id.*

## ARGUMENT

### Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, In*c., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id.* at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 fn.11(1986).  Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[3]  *See Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") *(citing Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)).  In a FOIA suit an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not been withheld,  is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001);

---

[3]For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

*Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980)*; Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980).

Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the affidavits are "relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency." *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Citizens Commission on Human Rights v. FDA*, 45 F.3d 1325, 1329 (9th Cir. 1995); *Bowen v. FDA*, 925 F.2d 1225, 1227 (9th Cir. 1991). *See also Hayden*, 608 F.2d at 1387; *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

"Summary judgment is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985.) Agencies establish that all of their obligations under the FOIA have been met through declarations and *Vaughn* indexes. The declarations in this matter were provided by individuals familiar with the steps taken by the BOP in response to plaintiff's FOIA request. Since the declarations in this matter demonstrate that the agency has met its obligations under the FOIA, and the pleadings show no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law, summary judgment should be granted to the defendants. *See Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982).

**Defendant's Searches Were Conducted In Good Faith And Were Adequate**

**The Applicable Legal Standard**

To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents'." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C.Cir.1995) (internal quotations and citations omitted). An agency must search for documents in good faith, 'using methods that are reasonably expected to produce the information requested. *Valencia-Lucena*, 180 F.3d 321, 326 (*citing Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C.Cir 1990)). The principal issue is not whether the agency's

search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n. 13 (*citing Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C.Cir.1986)); *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Services, Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C.Cir.1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (*citing Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id*. If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted). *Flowers v. I.R.S.*, 307 F.Supp.2d 60, 67 (D.D.C. 2004).

### Defendants Met Their Search Obligation

Plaintiff sought copies of all telephone conversation(s) recorded at MCFP Springfield to individuals at two telephone numbers and copies of transcriptions of the conversations. Kosiak Dec. at Attachment B.

The BOP records all calls on the monitored inmate telephone system (ITS) and normally maintains the recorded records for approximately 180 days. Kosiak Dec. at ¶5. The calls at issue were recorded in an electronic digital audio format. Kosiak Dec. at ¶18 fn. 2. Bureau of Prisons staff may preserve or "lock" a call in audio format while conducting an investigation or in response to a court order or subpoena to ensure that the call is not automatically destroyed at the end of the 180 day retention period. *Id*. at ¶7. Plaintiff was under investigation at MCFP Springfield for violations concerning mail and telephone usage. *Id*. Therefore, MCFP Springfield staff had "locked" or marked for preservation plaintiff's calls during their investigation. *Id*. MCFP Springfield staff

had locked the forty-five (45) calls made by plaintiff to the two pertinent telephone numbers; therefore, all of these calls were available and had not been destroyed. *Id.*

To use the ITS system an inmate must prepare a proposed telephone list and sign an acknowledgment form indicating he is aware the inmate telephone system is subject to monitoring. *Id.* at ¶5. There also is a separate unmonitored procedure which may be used for calls to attorneys. *Id.*

To allow use of the monitored inmate telephone system, each inmate is issued a Phone Access Code (PAC). *Id.* The PAC allows an inmate to place calls to individuals on his approved telephone list. When an inmate places a monitored call, the PAC initiates the generation of the data which is in the inmate's phone record, his "telephone transactional data." *Id.*

"Telephone transactional data" is the record of monitored calls placed by an inmate and is retrievable by the inmate's register number, phone numbers called, or dates the call was placed. This record of calls also includes the time the call was initiated and its duration. *Id.* at ¶6. BOP institutions conduct a search of the inmate's telephone record using the inmate's register number, telephone number(s) called, and also if specified by the requester, date of a specific call, or during a specific time frame. *Id.* If a responsive call is found on the inmate's telephone record, the recording of the call is retrieved if the recording has not yet been destroyed. *Id.*

Following receipt of plaintiff's FOIA request, the search at the Medical Center for Federal Prisoners (MCFP) Springfield was conducted by using plaintiff's register number; MCFP Springfield conducted a search for the calls placed to the two telephone numbers (212) 744-6324 and (732) 441-0230,specified in the request. *Id.* MCFP Springfield staff using that search method located forty-five (45) telephone conversations made to the referenced telephone numbers between October 2004 and April 2005. *Id.* at ¶7.

Telephone conversations are not transcribed in the ordinary course of monitoring calls. *Id.* at ¶7. For BOP administrative discipline or internal investigations purposes staff may make brief electronic notes of the conversation in the database, but no transcription of the call is done. *Id.* at ¶7 fn. 1. Since the Bureau of Prisons does not create transcripts of telephone tapes, the only format available for search is in electronic audio format. *Id.* at ¶7. Occasionally, calls may be preserved as evidence for criminal prosecution. However, any transcripts of these calls would be done by

4

another law enforcement agency. *Id*. Usually the transcript would be made by another law enforcement agency, such as the FBI, ATF or DEA. For BOP administrative discipline or internal investigation purposes, only brief summarized information would be noted electronically in the database, if applicable. *Id.* at ¶7 and fn.1.

The searches conducted were reasonably calculated to find the requested calls. The institution searched for plaintiff's telephone records in the inmate telephone system using his register number, the telephone numbers he requested and, the time frame of calls while he was at the institution. The inmate telephone system is the system used for monitored inmate calls. The telephone transaction data is the record generated when inmates place calls on the monitored system. Thus, the search used the method reasonably expected to produce the requested information.

Since plaintiff was under investigation at MCFP Springfield for violations concerning mail and telephone usage, no verbatim transcriptions of the conversations were made, as was discussed above. See Kosiak Dec. at ¶11 ("Additionally, plaintiff should have been advised that we do not create transcripts in the normal course of business. This was an inadvertent omission as our response to FOIA requests for telephone transcripts normally include this language.").

### Defendant Properly Applied The FOIA Exemptions

As a law enforcement agency, BOP properly withheld information relating to a third party in records compiled for law enforcement purposes. The Attorney General has promulgated rules exempting these records from the Privacy Act's access provisions as authorized by 5 U.S.C.§ 552a(j)(2), which appears at 28 C.F.R. § 16.97. *Id.* at ¶14. Subsection (j)(2) exempts from mandatory disclosure records maintained by an agency or component thereof, which performs as its principal function any activity pertaining to the enforcement of criminal laws. Accordingly plaintiff's request was processed as a FOIA request rather than a Privacy Act request.

### 5. U.S.C. § 552(b)(7)(C) [Law Enforcement – Personal Privacy]

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and

5

proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997), *citing Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), *citing Pratt*, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" *Keys*, 830 F.2d at 340, quoting *Pratt*, 673 F.2d at 421.

BOP is a law enforcement agency, and is considered such pursuant to various statutes, including the Federal Tort Claims Act, 28 U.S.C. § 2680(h), and the Federal Employees Retirement System, 5 U.S.C. § 8401 (17)(D)(i). *Id.* at ¶8. BOP employees perform inherently law enforcement functions. They possess the authority to make arrests, 18 U.S.C. § 3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. § 511.10-511.12, 552.10-552.14. Indeed, BOP is the primary law enforcement agency responsible for enforcing criminal statutes with respect to the prison population of inmates, and more broadly, BOP is responsible for protecting inmates, staff, and the community from the possible criminal actions of incarcerated inmates. *See* 18 U.S.C. § 4042. Kosiak Dec. at ¶8.

Bureau staff continue to work with other Federal, state, and local law enforcement staff to identify threats to institution security and reduce crime in the community. *Id.* at ¶9. In addition to identifying the activities of inmates coming into or already in Bureau custody, the intelligence officers maintain active liaison relationships with the FBI Joint Terrorism Task Forces throughout the country. BOP is also a member of the National Joint Terrorism Task Force. The interagency intelligence sharing continues and has proven beneficial to gaining valuable intelligence regarding gang activity, drug trafficking, and terrorism. *Id.*

The records at issue – monitored telephone calls-- were compiled for law enforcement purposes. The BOP monitors the inmate population closely and continuously to detect criminal activity, such as arranging drug transactions, escapes, conducting an illegal business, threatening witnesses, attempting to circumvent telephone monitoring procedures by placing third party calls, or talking in code. *Id.* at ¶9. BOP tapes all calls placed on the inmate telephone system and

maintains the taped records for approximately 180 days. However, random monitoring of the calls and internal investigations may reveal the need to identify or maintain specific recordings beyond the required time frame to preserve them as evidence for future criminal prosecutions and/or administrative disciplinary actions. *Id.* Through random telephone monitoring, it may be possible for BOP to prevent introduction of contraband into the institution and other criminal activity previously listed. *Id.* at ¶10. By making inmates aware of the telephone monitoring, BOP also creates a disincentive to use the telephones to facilitate criminal activity. *Id.* BOP has historically obtained important evidence of criminal activity from monitoring and recording inmate telephone calls. The information is real-time, first-hand, and comes from a population disproportionately likely to commit crimes. *Id.* The information is not particularly useful for BOP's other missions, such as responding to particular needs of individual inmates, nor does the information gathered from inmate calls have much utility to BOP generally, except as the information may relate to law enforcement purposes of investigating and deterring crime and protecting the safety of the prison population, BOP staff, and the community. *Id.* The information is maintained apart from BOP's Central Inmate File, and is periodically searched by BOP staff and other law enforcement agencies; these searches most frequently involve investigations of crime or possible crime committed by BOP inmates. *Id.* Thus, plaintiff's monitored telephone calls were compiled for law enforcement purposes.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' *Department of Air Force v. Rose*, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." *Reporter's Committee*, 489 U.S. at 772

(internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id*. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." *Id*. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F. Supp. 24, 27 (D.D.C. 1995), *citing Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting *Reporters Committee*, 489 U.S. at 773) (internal quotation marks omitted).

The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir.1991). Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services*, 926 F.2d at 1206. With regard to other information of a private nature, the balancing test comes into play.[4]

Here, the documents at issue are taped recordings of conversations between plaintiff and other third party individuals. All of the taped phone calls were accepted by a third party who conversed with the plaintiff for varying lengths of time. At no time during any of the taped phone calls did the plaintiff or third party discuss the monitoring/recording of phone calls nor was consent for disclosure given by the third parties. Klotz Dec. at ¶6.

---

[4]Exemption (7)(C) is not limited solely to protecting names, addresses, or identifying particulars of private parties. *See, e.g., Accuracy in Media, Inc. v. Nat'l Park Service*, 194 F.3d 120, 122-23 (D.C. Cir 1999)(finding that privacy interest existed in not having death scene photographs made public); *NARA v. Favish*, 124 S.Ct. 1570 (2004); *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C.Cir 1992)(taped conversations withheld.)

In the instant matter, plaintiff seeks the recorded conversations to challenge BOP administrative action in removing the two telephone numbers from his list of authorized calls and transferring him to another facility.  Complaint at ¶ 5.  A FOIA requester's private need for information in connection with litigation plays no part in whether disclosure is warranted. *See Burge v. Eastburn*, 934 F.2d 577, 530 (5th Cir. 1991) (requester's need, however, significant, does not warrant disclosure); *Thomas v. Office of United States Attorney*, 928 F. Supp. 245, 251 (E.D.N.Y. 1996) (holding prisoner's personal interest in information to challenge his conviction "does not raise FOIA-recognized interest that should be weighed against the subject's privacy interest); *Monaco v. Department of Justice, et al.*, Civil Action No. 02-1843 (EGS) (Mem. Op.) (Sept. 24, 2003) (plaintiff seeking prison tape recordings failed to articulate a public interest and Court held that "[t]he only member of the public who would benefit from the release of the recorded call is plaintiff himself.").  Therefore, release is not in the public interest.

The BOP weighed the privacy rights of third parties in its non-disclosure decision.  Kosiak Dec. at ¶¶ 16-17, 19-20.  Title 28 C.F.R. § 540.102 provides: "The Warden must provide notice to the inmate of the potential for monitoring.  Staff may not monitor an inmate's properly placed call to an attorney.  The Warden shall notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney."  Inmates are made aware that unless they request access to an unmonitored phone for an attorney call, the call will be monitored.  In addition, Bureau of Prisons policy requires that a notice is placed at all monitored telephone locations. *Id.* at ¶16.

However, the third party involved in the telephone call is usually not aware that the call is being monitored.   *Id.* at ¶17; Klotz Dec. at ¶¶7-9.  At the beginning of telephone calls on a monitored line at MCFP Springfield, the third party is notified that the call is from a federal prison; however, there is no notification that the call is monitored.  Klotz Decl. at ¶¶8-9.   Thus, the individual called by plaintiff may very well not be aware that their call is being recorded.  Therefore, release of the recorded telephone calls could constitute an invasion of personal privacy  because plaintiff has not demonstrated that the third party had knowledge of the monitoring and gave consent for its release.   Kosiak Dec. at ¶17.

Providing the recorded telephone conversations could provide the plaintiff with an opportunity to alter the recordings which could then be used to the detriment of the other party's

reputation. Also, release of recorded telephone conversations could stigmatize the reputation of an individual mentioned in a law enforcement file. *Id.* at ¶19. A further step in determining whether there would be a "clearly unwarranted invasion of personal privacy" is to balance the interests of protecting an individual's privacy and the public's right to information concerning the operation or activities of the government. In this case, release of the taped telephone conversations between the plaintiff and a third party will in no way shed light on any illegal government activities. The privacy rights of the third party in this case far outweigh any public interest in the release of the tapes. In fact, the only interest that would be served by the release of the tapes would be the plaintiff's. *Id.* at ¶20. Therefore, the tapes were legitimately withheld under Exemption (b)(7)(C).

### BOP Properly Evaluated the Records for Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte.*" *Trans-Pacific Policing Agreement v. U.S. Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Here, BOP cannot segregate information which was not exempt – i.e. plaintiff's end of the call-- because BOP does not have the technical capability to reasonably segregate portions of the conversation from the recording. The calls at issue were recorded into the Inmate Telephone System (ITS-II), which saved the conversations into a ".wav computer" format. Kosiak Dec. at ¶18. A Wav file is a digital audio file format. *Id.* at ¶18 fn. 2. Currently, BOP only has the capability to edit calls recorded onto a cassette tape, which was done under the old telephone system. *Id.* at ¶18 and fn 2. The current system does not provide a means to download the computer files to a cassette tape. *Id.* at ¶18. Thus, BOP does not have the technical capacity to edit the calls at issue to segregate out plaintiff's portion of the calls.

An agency is not required to purchase new equipment in order to process a FOIA request. *See Spannaus v. C.I.A.,* 841 F.Supp. 14, 18 (D.D.C.1993); *Burns v. United States Dep't of Justice,*

C.A. No. 99-3173, slip op. at 2 (D.D.C. Feb. 5, 2001).   Thus, defendant cannot reasonably segregate.

Additionally, if BOP did have the technical capability, providing the recorded telephone conversation could provide the plaintiff with an opportunity to alter the recordings which could then be used to the detriment of third parties' reputations. *Kosiak Dec.* at ¶19.   A release also could stigmatize the reputation of an individual mentioned in the record.   *Id.*

Therefore, defendant properly determined that the recorded conversations reasonably could not be segregated.

11

**CONCLUSION**

The defendant has demonstrated that DOJ and its sub-component, BOP, as set forth in this motion, have properly responded to plaintiff's FOIA request and have established that no information was improperly withheld. Accordingly, the Court should grant defendant's motion for summary judgment.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney


_____
 R. CRAIG LAWRENCE, D.C..  BAR #171538
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL T. SWOPE,                          )
                          Petitioner,   )
        v.                              )        Case No. 05-2301 (RCL)
                                        )
UNITED STATES DEPARTMENT                )
OF JUSTICE, et al.                      )
                          Respondent.   )
_____

## STATEMENT OF MATERIAL FACTS

Defendant respectfully submits this statement of facts as to which there is no material dispute:

1. On or about May 9, 2005, the plaintiff filed a FOIA request with the Bureau of Prisons (BOP) dated May 1, 2005.  In this request, the plaintiff stated:

> I am requesting the following information under the FOIA/PA provision:
> Copies of all telephone conversation(s) recorded by the SIS Department here at the Medical Center for Federal Prisoners – 1900 West Sunshine, Springfield, Missouri 65807.
> The following is provided for better processing of this request:
> I want copies of transcribed conversation to the following people: Dr.Bernard Wechsler, M.D. 7606 Seventh Ave., Brooklyn, NY 11209 (732) 441-0230
>
> Lucia, Vincent, Olympia, and Carmella Esposito, 67 East 77th Street, New York, New York 10021 (212) 744-6324..

Kosiak Dec. at ¶ 4.

2. MCFP Springfield conducted a search for the requested conversations on their Telephone Activity Record System by doing a Telephone Number Usage Search using plaintiff's register number and the telephone numbers specified in the FOIA request.  Kosiak Dec. at ¶¶5-6.  Forty-five (45) calls pertaining to telephone numbers (732) 441-0230 and (212) 744-6324 between October

2

2004 and April 2005 were found.  Kosiak Declaration at ¶7 and attachment C.

3.  By letter dated May 31, 2005, the plaintiff was advised that his access to the requested materials was denied under Exemption (b)(7)(A) and (b)(7)(E) of FOIA.  Kosiak Dec. at ¶11 and attachment D.  The plaintiff also was advised that if he was dissatisfied with the response,  he could appeal to the Office of Information and Privacy (OIP).  Kosiak Declaration attachment D.

4.  The plaintiff appealed the BOP's decision, and OIP assigned the appeal number 05-2071. Kosiak Declaration at  ¶ 12 and attachment E.

5.  By a decision letter dated September 19, 2005, OIP advised the plaintiff that the withholding of the requested records under 5 U.S.C. §  552 (b)(7)(A) -- which pertains to records or information compiled for law enforcement purposes, the release which could reasonably be expected to interfere with enforcement proceedings-- was no longer appropriate. Kosiak Declaration at ¶13.  However, OIP determined it was appropriate to withhold portions of the recorded conversations that contain statements of a third party pursuant to 5 U.S.C. § 552(b)(7)(C).  Kosiak Dec. at Attachment F.  Regarding plaintiff's portion of the taped conversations, it was determined that they were exempt from disclosure because they could not be segregated out because "all portions are inextricably intertwined and would invade the privacy of third parties."  *Id.*   The plaintiff also was advised that if dissatisfied with OIP's action on his appeal, the plaintiff could seek judicial review in accordance with 5 U.S.C.§ 552(a)(4)(B).  *Id.*

6.  The calls at issue were recorded into the Inmate Telephone System (ITS-II), which saved the conversations into a ".wav computer"  format.  Kosiak Dec. at ¶18.  A Wav file is a digital audio file format.  *Id.* at ¶18 fn. 2.

7.  Currently, BOP only has the capability to edit calls recorded onto a cassette tape, which

3

was done under the old telephone system. *Id.* at ¶18 and fn 2. The current system does not provide

a means to download the computer files to a cassette tape. *Id*. at ¶18. Thus, BOP does not have the

technical capacity to edit the calls at issue to segregate out plaintiff's portion of the calls.

8. Telephone conversations are not transcribed in the ordinary course of monitoring calls at

BOP. Kosiak Dec. at ¶7. For BOP administrative discipline or internal investigations purposes

staff may make brief electronic notes of the conversation in the database, but no transcription of the

call is done. *Id*. at ¶7 fn. 1. Since the Bureau of Prisons does not create transcripts of telephone

tapes, the only format available for search is in electronic audio format. *Id*. at ¶ 7. For BOP

administrative discipline or internal investigation purposes, only brief summarized information

would be noted electronically in the database, if applicable. *Id.* at ¶7 and fn.1.

9. BOP is a law enforcement agency and the conversations at issue were recorded for a law

enforcement purpose. Kosiak Dec. at ¶¶ 8-10.

                    Respectfully submitted,


_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney


_____
 R. CRAIG LAWRENCE, D.C.. BAR #171538
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of March, 2006, a copy of the foregoing motion for summary judgment was mailed, postage prepaid to plaintiff pro se,

CARL T. SWOPE
R27196-424
DEVENS FEDERAL MEDICAL CENTER
P.O. Box 879
Ayer, MA 01432


_____
Rhonda C. Fields
Assistant United States Attorney

5