UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL T. SWOPE,                    )
                    Petitioner,   )
                                  )
    v.                            )        Case No. 05-2301 RCL
                                  )
UNITED STATES DEPARTMENT          )
OF JUSTICE, et al.                )
                    Respondent.   )

## DECLARATION OF CRAIG R. KLOTZ

1.  I, Craig R. Klotz, do hereby declare that I am a Legal Intern for the United States Department of Justice, Federal Bureau of Prisons(BOP). My duty station is the North Central Regional Office (NCRO), located in Kansas City, Kansas. I have been employed with the BOP since February 2005.

2.  As a Legal Intern, I have access to records maintained by the BOP in the normal course of business. Included in my duties is the responsibility to respond to inmate inquiries and complaints filed under the Freedom of Information Act (FOIA) and Privacy Act (PA) of 1974. I maintain the physical file, documenting the request and subsequent determination pursuant to filing of a proper request under the provisions of FOIA and PA, pertaining to any facility or BOP activity within the jurisdiction of the NCRO. Consistent with this responsibility, I have access to official records maintained at the NCRO.

3.  The statements made herein are made on the basis of knowledge acquired through the performance of my official duties.

Carl Swope v. United States Department of Justice, et al.
Klotz Declaration
Page 2

    4. In conjunction with the above-entitled matter, the forty-five (45) telephone tapes in question should be withheld pursuant to 5 U.S.C. §552 (b)(7)(C). These telephone tapes were compiled for law enforcement purposes. The BOP monitors inmate telephone calls, except those properly placed to attorneys, based on regulations which state in part:

> The Warden shall establish procedures that enable monitoring of telephone conversations on any telephone located within the institution, said monitoring to be done to **preserve the security and orderly management of the institution and to protect the public.** (Emphasis added).

Title 28 C.F.R. § 540.102


    5. In addition, the BOP published in the Federal Register, as required by the PA of 1974 (5 U.S.C. 552a), a notice establishing a new system of records entitled "Telephone Activity Record System (JUSTICE/BOP-011)." As part of this notice, the BOP detailed the purpose(s) for which this system of records is maintained.

> This system of records is maintained to manage financial records relating to inmate calls and to ensure that inmates exercise their telephone privileges in a manner consistent with correctional goals. The related uses for which the BOP will maintain the system includes, 1) Accounting of inmate funds for telephone use; 2) maintaining inmate telephone lists; 3) monitoring inmate telephone activity; and 4) **conducting investigations, e.g. investigations of inmate funds as related to telephone usage, and/or illegal activities of suspected illegal activities being conducted, coordinated, or directed from within a Federal**

Carl Swope v. United States Department of Justice, et al.
Klotz Declaration
Page 3

**Correctional Institution."** (Emphasis added).

Privacy Act of 1974; New System, 60 Fed. Reg. 19.958 (1995)


6. All telephone calls placed on inmate telephones are monitored and recorded. Inmates are

permitted by policy to use unmonitored staff telephones to place approved attorney calls. Telephone

calls on the inmate telephone system are monitored by institution staff to detect activity which would

impact the safety and security of the institution. For instance, telephone monitoring has uncovered

escape plots, and introduction of contraband (drugs and weapons) plots. Further detail relevant to

this issue cannot be provided to the plaintiff or placed on the public record.


7. In deciding whether access to these taped telephone recordings should be provided, the

privacy rights of third parties must be taken into consideration. Title 28 C.F.R. § 540.102 provides,

"the Warden must provide notice to the inmate of the potential for monitoring. Staff may not

monitor an inmate's approved attorney telephone call. Id. The Warden shall notify an inmate of the

proper procedures to have an unmonitored telephone call with an attorney." In addition, BOP policy

requires that a notice is placed at all monitored telephone locations. On the other hand, the third

party involved in the telephone call is usually not aware the call is being monitored or recorded.

Thus, the third party would have no opportunity to consent to recording/monitoring. Attached hereto

as Attachment A is a true and correct copy of Program Statement 5264.07, Telephone Regulations

for Inmates, Section 7.

Carl Swope v. United States Department of Justice, et al.
Klotz Declaration
Page 4

8. I have listened to the above mentioned telephone calls. None of these recordings contain any notice to the third party that the call is being monitored or recorded. At no time during the conversation between the plaintiff and third party, does plaintiff notify the third party that the calls were being monitored or recorded.

9. The recorded calls begin with "this call is from a federal prison. This call is from (inmate speaks) Swope. To decline this call hang up. To accept this call dial five (5) now." All of these taped phone calls were accepted by a third party who conversed with the plaintiff for varying lengths of time. At no time during any of the taped phone calls did the plaintiff or third party discuss the monitoring/recording of phone calls or was consent given.

10. The Attorney General has promulgated rules exempting these records from the PA's access provisions as authorized by 5 U.S.C. § 552a(j)(2), which appears at 28 C.F.R. § 16.97. Subsection (j)(2) exempts from mandatory disclosure records maintained by an agency or component thereof, which performs as its Principle function any activity pertaining to the enforcement of criminal laws. In this case, the records at issue were compiled for law enforcement purposes during the course of its performance of its law enforcement functions of protecting inmates, staff, and the community. The telephone recordings requested by the plaintiff are part of the Telephone Activity Record System (JUSTICE/BOP-011). As previously stated, the Attorney General has promulgated rules at 28 C.F.R. § 16.97, exempting these records from the PA's access provisions.

Carl Swope v. United States Department of Justice, et al.
Klotz Declaration
Page 5

11. Title 28 C.F.R. § 16.97(f)(3) clearly articulates the purpose behind exemption of these records from 5 U.S.C. § 552a(j)(2) because it is "essential to prevent access of information by record subjects that may **invade third party privacy** (Emphasis added); frustrate the investigative process; jeopardize the legitimate correctional interests of safety, security, and good order to prison facilities; or otherwise compromise, impede, or interfere with BOP or other law enforcement agency activities."

12. The BOP processes all FOIA requests for monitored telephone conversations and they are handled the same regardless of who the third party is. The portion of the third party's participation in the call is withheld unless specific consent is given to allow for the release of their portion of the call.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of January 2006.

Craig Klotz
Legal Intern
North Central Regional Office
Kansas City, Kansas

**ATTACHMENT A**

# ATTACHMENT A



"CORRECTED COPY 2/4/2002"

**U.S. Department of Justice**
**Federal Bureau of Prisons**

# Program Statement

OPI:      CPD
NUMBER:   5264.07
DATE:     1/31/2002
SUBJECT:  Telephone Regulations
          for Inmates

1.  **[PURPOSE AND SCOPE § 540.100**

   a.  **The Bureau of Prisons extends telephone privileges to inmates as part of its overall correctional management. Telephone privileges are a supplemental means of maintaining community and family ties that will contribute to an inmate's personal development. An inmate may request to call a person of his or her choice outside the institution on a telephone provided for that purpose. However, limitations and conditions may be imposed upon an inmate's telephone privileges to ensure that these are consistent with other aspects of the Bureau's correctional management responsibilities. In addition to the procedures set forth in this subpart, inmate telephone use is subject to those limitations which the Warden determines are necessary to ensure the security or good order, including discipline, of the institution or to protect the public. Restrictions on inmate telephone use may also be imposed as a disciplinary sanction (see 28 CFR part 541).]**

   28 CFR part 541 refers to the Program Statement on Inmate Discipline and Special Housing Units.

   Contact with the public is a valuable tool in the overall correctional process. Toward this objective, the Bureau provides inmates with several means of achieving such communication. Primary among these is written correspondence, with telephone and visiting privileges serving as two supplemental methods.

   Although there is no constitutional right for inmates to have unrestricted telephone communication, particularly when there are

[Bracketed Bold - Rule]
Regular Type - Implementing Information

PS 5264.07
1/31/2002
Page 2

alternate methods of communication, the Bureau provides inmates
with telephone access consistent with the requirements of sound
correctional management.

(1)  Warden's Authority.  Consistent with this PS'
provisions, Wardens are responsible for implementing and
maintaining a telephone program within their institutions.  In
establishing institution telephone programs, Wardens are to
consider such variables as their institutions' size and
complexity.

The Warden has the authority to restrict or suspend
temporarily an inmate's regular telephone privilege when there is
reasonable suspicion that the inmate has acted in a way that
would indicate a threat to the institution's good order or
security.

(2)  Reasonable Suspicion.  Reasonable suspicion exists when
facts and circumstances are presented to the Warden that the
inmate is engaged in, or attempting to engage in, criminal or
other prohibited behavior using the telephone privilege afforded
to him or her.  Reasonable suspicion may be based on reliable,
confidential information gathered through intelligence that
identifies the inmate in question.  In determining reasonable
suspicion, staff should consider whether the available
information could reasonably lead a person with correctional
experience to suspect the inmate is engaged in criminal or other
prohibited behavior using the telephone system.

[b.  Except as provided in this rule, the Warden shall permit
an inmate who has not been restricted from telephone use as the
result of a specific institutional disciplinary sanction to make
at least one telephone call each month.]

Subsection b. provides all inmates in Bureau custody, including
those in Special Housing Unit (SHU) status, the opportunity to
make at least one telephone call per month.  The loss of
commissary privileges does not include the loss of telephone
privileges, as the loss of telephone privileges must be listed
specifically as a separate sanction.

To eliminate the introduction of drugs and drug paraphernalia
into Bureau institutions, the DHO, as a disincentive for inmates
found guilty of these violations, may impose the sanction of loss
of telephone and/or visiting privileges.  Refer to the Program
Statement on Inmate Discipline and Special Housing Units.

To ensure the Trust Fund's continued financial integrity and for institution security purposes, inmates must place all personal telephone calls over the inmate telephone system.  Staff are not to place telephone calls for inmates over the institution telephone system, other than in situations as indicated in Sections 10.[e.] and 14.[c.] of this Program Statement.

2.  PROGRAM OBJECTIVES.  The expected results of this program are:

   a.  All inmates will be afforded the opportunity to maintain family and community ties consistent with institution and community safety.

   b.  Inmates will be responsible for the expense of telephone use.

   c.  All institutions will have monitoring procedures established to preserve the institution's security, orderly management and safety of the community.

   d.  Bureau telephone policy and procedures will comply with the terms of a settlement approved by the U.S. District Court in a nationwide federal prisoner class action suit, Washington v. Reno, Nos. 93-217, 93-290 (E.D.KY.).

3.  DIRECTIVES AFFECTED

   a.  Directive Rescinded

    PS 5264.06      Telephone Regulations for Inmates (12/22/95)

   b.  Directives Referenced

      PS 1315.07    Inmate Legal Activities (11/5/99)
      PS 1330.13    Administrative Remedy Program (12/22/95)
      PS 1480.04    Contact with News Media (5/19/99)
      PS 4500.04    Trust Fund/Warehouse/Laundry Manual
                    (12/15/95)
      PS 5100.07    Security Designation and Custody
                    Classification Manual (9/3/99)
      PS 5265.11    Correspondence (7/9/99)
      PS 5267.06    Visiting Regulations (5/17/99)
      PS 5270.07    Discipline and Special Housing Units
                    (12/29/87)

PS 5380.07        Inmate Financial Responsibility Program
                  (1/3/00)
PS 7331.03        Pretrial Inmates (11/22/94)

   c.  Rules cited and/or referenced in this Program Statement are
contained in 28 CFR part 540, subparts A-B, D, E, and I;
28 CFR part 541, subparts A-B; 28 CFR part 542, subpart B;
28 CFR part 543, subpart B, 28 CFR part 545, subpart B, and
28 CFR part 551, subpart J.

4.  STANDARDS REFERENCED

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4439, 3-4259, 3-4260, and
3-4263

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-3E-02, 3-ALDF-3D-23,
3-ALDF-3D-21, 3-ALDF-3D-22, and 3-ALDF-5D-09

   c.  American Correctional Association Standards for Adult
Correctional Boot Camp Programs:  1-ABC-5D-11

   d.  American Correctional Association 2nd Edition Standards for
the Administration of Correctional Agencies:  2-CO-5D-01

5.  SUMMARY OF CHANGES.  This reissuance incorporates the
following modifications:

   •    Clarifies the Warden's authority regarding the
        restriction or suspension of telephone privileges,

   •    Revises the hours of the Inmate Telephone Operation,

   •    Implements a 300 minutes per calendar month telephone
        restriction for inmates with ITS-II accounts,

   •    Eliminates the requirement of sending a notice letter
        to individuals who are not immediate family members,

   •    Eliminates the requirement of filing the system
        generated inmate telephone list in the Inmate Central
        File,

   •    Incorporates procedures for the Inmate Telephone System
        ITS-II, and;

- Incorporates language pertaining to Public Safety Factor (PSF) Serious Telephone Abuse.

6.  **PUBLIC SAFETY FACTOR (PSF) SERIOUS TELEPHONE ABUSE.**
Ordinarily, an inmate whose current offense, prior history, or threat characteristics indicate a propensity to abuse telephone privileges will be assigned a PSF Serious Telephone Abuse. Refer to the Security Designation and Custody Classification Manual for the specific criteria for applying the PSF Serious Telephone Abuse.

7.  **PRETRIAL, HOLDOVER, INITIAL DESIGNATION AND REDESIGNATION PROCEDURES.** These procedures apply only to institutions where individual phone access codes (PAC) are utilized:

  a.  **Pretrial Inmates**

- The PSF Serious Telephone Abuse applies to sentenced inmates and therefore, does not apply to Pretrial inmates. However, if institution staff receive information on a pretrial inmate that may jeopardize the security and safety of the institution or community, staff will follow the procedures outlined in Section 8.b. of this Program Statement.

  b.  **Holdover Inmates**

- Inmates with PSF Serious Telephone Abuse imposed by the sending institution will not be permitted access to the ITS-II telephone system, except as provided in Sections 10.[e.] or 14.[c.].

  c.  **Initial Commitment**

- Upon his/her initial commitment, an inmate with a PSF of Serious Telephone Abuse will not be assigned a PAC until initially classified by the Unit Team. Phone calls may be allowed as provided in Sections 10.[e.] or 14.[c.]. Inmates identified at their initial classification as needing telephone restrictions will not be permitted access to the ITS-II telephone system until after the final review by the Warden (see Section 8.b.)

  d.  **Redesignation**

PS 5264.07
1/31/2002
Page 6

- The procedures outlined in Section 7.c. above also apply to redesignation cases.

8.  TELEPHONE RESTRICTIONS IMPOSED BY THE WARDEN.  Inmates may be subject to telephone restrictions imposed by the Warden to protect the safety, security, and good order of institutions, as well as to protect the public.  Telephone restrictions imposed under the authority of this section are separate and apart from telephone restrictions the UDC or DHO impose following formal, and completed, inmate discipline proceedings.

    a.  Authorized Circumstances.  Inmates may be subject to telephone restrictions under this section in the following two circumstances:

        (1)  PSF for Serious Telephone Abuse.  If an inmate is assigned the PSF for Serious Telephone Abuse (see the Security Designation and Custody Classification Manual), a partial or total telephone restriction is authorized.  A telephone restriction in this situation is discretionary, as necessary to ensure the institution's safety, security, good order or to protect the public.  When deemed necessary, ordinarily, the inmate's Unit Manager recommends this type of restriction to the Warden, who makes the decision.  The PSF is applied during the designation process, initial classification, or program reviews.

        (2) Pending Investigation or Disciplinary Action for Possible Telephone Abuse.  If an inmate is pending either investigation or disciplinary action for possible telephone abuse, a partial or total telephone restriction is authorized.  A telephone restriction in this situation is discretionary, as necessary to ensure the institution's safety, security, or good order, or to protect the public.  When deemed necessary, ordinarily, the Special Investigative Supervisor's office recommends this type of restriction.

    b.  Procedures for Imposing Telephone Restrictions.  The following procedures must be followed when imposing, or renewing, a telephone restriction under this section:

        (1)  The appropriate staff member recommends a telephone restriction to the Warden by completing the Request for Telephone Restriction form (BP-740.052).  The recommending staff member should describe briefly the reason for recommending a telephone restriction, as well as the extent

PS 5264.07
1/31/2002
Page 7

of the proposed restriction.  It is not necessary that
telephone restrictions under this section be total; partial
restrictions are allowed.

For example, staff may recommend reducing an inmate's
telephone use to 100 minutes per month rather than a total
restriction, if such a restriction would sufficiently
protect the safety, security, or good order of the
institution, or protect the public.

(2)  The Warden will review the recommendation and either
approve, modify, or deny the restriction.  If the Warden
approves a restriction, such decision must be based on the
conclusion that it is necessary to protect the institution's
safety, security, or good order, or to protect the public.

(3)  If the Warden approves a telephone restriction, a copy
of the completed form should be provided to the inmate, the
Trust Fund Section, and placed in Section 3 of the Inmate's
Central File.

(4)  Telephone restrictions imposed by the Warden due to a
PSF for Serious Telephone Abuse must be reviewed at least
every six months, ordinarily in conjunction with the program
review, to determine if the restriction should continue or
be modified.  A decision to continue a current telephone
restriction imposed under this section requires no further
action, but must be documented in the program review report.

Any proposed change to a current telephone restriction must
be made according to these procedures, and requires the
Warden's approval.  If appropriate, an inmate can earn back
telephone privileges gradually, based on demonstrated
responsibility documented by the inmate's Unit Team or other
staff.

(5)  Telephone restrictions imposed pending an investigation
or current disciplinary action for possible telephone abuse
are limited to a period of 30 days.  If an additional 30 day
period is required to complete either the investigation or
disciplinary process, the Warden must re-authorize the
restriction using these procedures.  Specifically, the
Warden's approval must be obtained on another Request for
Telephone Restriction form (BP-740.052).  Unless re-
authorized in this manner, Trust Fund Branch staff must

automatically reinstate the inmate's telephone privileges
when the 30 day period expires.

Each subsequent restriction period is limited to 30 days.
Staff should make every effort to complete investigations
and disciplinary proceedings for possible telephone abuse
within the first 30 day period of the telephone restriction.

(6)  Inmates with telephone restrictions under this section
are still entitled to place at least one telephone call per
month, unless also under a sanction of telephone restriction
the UDC or DHO imposed following formal, and completed,
inmate discipline proceedings, or under investigation by the
Special Investigative Supervisor (SIS).  Ordinarily, these
telephone calls are to be placed through the inmate
telephone system, not by staff.

(7)  Inmates may challenge telephone restrictions imposed
under this section through the Administrative Remedy
Program.

9.  COURT SETTLEMENT AFFECTING THIS PROGRAM STATEMENT.  The
settlement in Washington v. Reno, Nos. 93-217, 93-290 (E.D.KY.),
which was approved by the Court on November 3, 1995, required the
Bureau of Prisons to make some policy changes.  To comply with
the settlement's provisions, this Program Statement on Telephone
Regulations for Inmates provides procedures that Bureau
institutions are to use to implement and maintain the telephone
program.

Until February 23, 2002, the Bureau is bound by the terms of the
Settlement Agreement in Washington v. Reno, Case Nos. 93-217,
93-290, Eastern District of Kentucky.  The full text of the
Settlement Agreement can be found either in the Settlement
Agreement Order on file with the Court or in the inmate law
library.

10.  [PROCEDURES § 540.101.]  Debit/Collect calling (ITS-II)
procedures contained in this PS apply to all institutions.

 [a.  Telephone List Preparation.  An inmate telephone call
shall ordinarily be made to a number identified on the inmate's
official telephone list.  This list ordinarily may contain up to
30 numbers. The Associate Warden may authorize the placement of
additional numbers on an inmate's telephone list based on the
inmate's individual situation, e.g., size of family.]

PS 5264.07
1/31/2002
Page 9

Placing additional numbers on an inmate's telephone list is within the Associate Warden's correctional discretion. While 30 numbers should meet the needs of most inmates, there may be isolated situations when additional numbers may be warranted. For example, an inmate who has a large family may wish to place additional family members on the telephone list. Additional numbers may also be warranted for an inmate who wishes to place both work and home telephone numbers for his or her spouse and children.

[(1)  During the admission and orientation process, an inmate who chooses to have telephone privileges shall prepare a proposed telephone list. At the time of submission, the inmate shall acknowledge that, to the best of the inmate's knowledge, the person or persons on the list are agreeable to receiving the inmate's telephone call and that the proposed calls are to be made for a purpose allowable under Bureau policy or institution guidelines.]

An inmate is to use the Telephone Number Request form, (BP-505.052), to submit a list of up to 30 proposed names and telephone numbers to be included on his or her telephone list.

[(2)  Except as provided in paragraph (a)(3) of this section, telephone numbers requested by an inmate ordinarily will be placed on the inmate's telephone list. When an inmate requests the placement of numbers for persons other than for immediate family or those persons already approved for the inmate's visiting list, staff ordinarily will notify those persons in writing that their numbers have been placed on the inmate's telephone list. The notice advises the recipient that the recipient's number will be removed from the list if the recipient makes a written request to the institution, or upon the written request of the inmate, or as provided in paragraph (a)(3) of this section.]

Current procedures for institutions where ITS-II has been implemented no longer require the notice letter, as the called party has the capability to deny and/or block further telephone calls from the inmate. The telephone calls are branded to state "this call is from a federal prison."

Inmates may submit telephone numbers from immediate family members.  Immediate family members include:

PS 5264.07
1/31/2002
Page 10

- mother,
- father,
- step-parent and/or foster parent,
- brother and sister,
- spouse, and
- children.

In addition, inmates may submit telephone numbers for any person they choose, including numbers for courts, elected officials, and members of the news media.  Attorneys may be included on an inmate's telephone list with the understanding that these calls are subject to monitoring.  Telephone numbers for law enforcement officials working in their official capacity, a Bureau institution, a Bureau component, or a current Bureau employee, may be denied by unit staff if they are aware of the status of the requested person.

Unit staff are to review the inmate's BP-505.052 for compliance with this PS' provisions and to ensure the telephone numbers requested are appropriate.  For example, a telephone number for a victim/witness, or a recently separated Bureau employee may be inappropriate.  In these cases, they can only be placed on the inmate's telephone list with the written permission of the Warden.

Once unit staff approve and sign the BP-505.052 for processing, it must be forwarded to the ITS staff in a secure manner and within the time frames established by this Program Statement.  At no time will the BP-505.052 be returned to the inmate or handled by another inmate.

Once an inmate submits the initial list, it must be processed, ordinarily within five work days.  A work day is any day that is not a Saturday, Sunday, or holiday.

[(3)  The Associate Warden may deny placement of a telephone number on an inmate's telephone list if the Associate Warden determines that there is a threat to institution security or good order, or a threat to the public.  Any disapproval must be documented in writing to both the inmate and the proposed recipient.  As with concerns about any correctional issue, including any portion of these telephone regulations, an inmate may appeal the denial through the administrative remedy procedure (see 28 CFR part 542).  The Associate Warden will notify the denied recipient that he or she may appeal the denial by writing to the Warden within 15 days of the receipt of the denial.]

PS 5264.07
1/31/2002
Page 11

The provisions of 28 CFR part 542 are contained in the Program Statement on the Administrative Remedy Program.

The Associate Warden's authority to deny or block a number will be made on a case-by-case determination. The Associate Warden must notify the inmate of an administrative denial or a telephone number's removal, ordinarily within three work days following the denial or removal of the number.

Ordinarily, the telephone call's intended recipient will be notified within 15 work days of the denial or removal. This notification may be reasonably delayed for law enforcement purposes, e.g., such as suspected criminal activity by either the inmate or the call's intended recipient.

When a potential call recipient appeals the denial of a proposed number, the Warden is expected to respond ordinarily within 30 work days of receiving the appeal.

The Associate Warden's authority to deny or block a number will be used infrequently. For example, a telephone number known to belong to a victim or a witness, as identified on the Pre-Sentence Investigation Report or as otherwise verified by staff, or any telephone number of recently separated Bureau employee may not be placed on an inmate's telephone list without the Warden's written permission.

In addition to those situations listed above, telephone sanctions may be imposed pursuant to an institution disciplinary sanction (see Section 1.b. of this Program Statement).

(4) Copies of written documentation, blocking or unblocking a telephone number (at the recipient's request or the Associate Warden's decision, as provided in this section), should be forwarded to Trust Fund staff in the Financial Management Office.

(5) In the ITS-II system, the "call recipient" has the capability to deny and/or block further telephone calls from the inmate through his or her home telephone. A voice prompt will direct the called party through the process. This capability will be provided for direct-dial and collect calls from an inmate.

The recipient does not need to express reasons for his or her request to block the number from the inmate's telephone list. The ITS-II system capability eliminates the need for notifying a

PS 5264.07
1/31/2002
Page 12

recipient in writing of the recipient's option of having his or her name on an inmate's telephone list.

Once the recipient blocks a telephone number, the recipient can unblock the number only when he or she sends a written request for reinstatement.  To ensure the called party's identity, the request for reinstatement must include a copy of a recent telephone bill.  Trust Fund staff will process this request expeditiously.

Upon a telephonic request from a telephone call recipient for removal or blocking of his or her number from the inmates's telephone list, unit staff may request that the ITS technician place a temporary suspension, not to exceed 20 work days, on an inmate calling that specific telephone number.  The unit staff member should take reasonable steps to verify the identity of the person making the request (e.g., by calling the number to be blocked).  The call recipient should be informed that the removal or blocking of the number is temporary, and that he or she must submit a prompt written request to make it permanent.

[b.  Telephone List Update.  Each Warden shall establish procedures to allow an inmate the opportunity to submit telephone list changes on at least a quarterly basis.]

(1)  Request Submission.  In accord with the court-approved settlement in Washington v. Reno and while this settlement remains in effect, an inmate is allowed to submit proposed changes to his or her telephone list on any day up to three times per month.  Additional changes will be permitted when staff determine that the inmate has a demonstrated need for prompt communication.

In determining that additional changes are to be permitted due to a demonstrated need for prompt communication, staff must rely on their professional judgment and evaluate factors in each request on a case-by-case basis.  For procedures to use under compelling circumstances (such as a family emergency) which would not require a change to an inmate's telephone list, see Section 14.c. of this Program Statement.

Unit staff must provide an inmate with a BP-505.052, to submit proposed changes to his or her telephone list.  If the proposed change is a correction to the inmate's telephone list, staff should instruct the inmate to indicate with a "D" in the Add/Delete column, the number or other information that is to be

PS 5264.07
1/31/2002
Page 13

corrected, and provide the corrected number or other information
by indicating an "A" in the Add/Delete column.

(2)  Approval.  Unit staff are to approve updated requests
by signing and dating them in the space provided on the BP-
505.052 prior to submitting them to Trust Fund staff.

(3)  Processing Requests.  Ordinarily, proposed changes to
an inmate's telephone list are to be processed within five work
days, excluding the date of submission.  The five work days
requirement may be waived if the total number of changes the
inmate proposes is so large that institution staff cannot process
the changes and complete their other duties.

(4)  Filing Requests.  Correspondence relative to the
blocking or removal of blocks of any telephone numbers will be
placed in the FOI Section.  This documentation replaces the
requirement of maintaining a system generated telephone list from
Trust Fund staff in the Inmate Central File.

[c.  Telephone Access Codes.  An inmate may not possess another
inmate's telephone access code number.  An inmate may not give
his or her telephone access code number to another inmate, and is
to report a compromised telephone access code number immediately
to unit staff.]

The Phone Access Code (PAC) will be delivered to the inmate in
a manner that ensures the PAC number's confidentiality; e.g.,
through regular institution mail in a sealed envelope.  At the
time of delivery, the inmate should also receive instructions for
using the PAC and any additional information necessary for making
telephone calls.

Staff are to advise the inmate not to give his or her PAC to
another inmate, and to report a compromised PAC immediately to
unit staff.  Inmates who provide their PAC to others are subject
to disciplinary action.  Refer to the Program Statement on Inmate
Discipline and Special Housing Units for specific procedures.

After a PAC is established for an inmate, that inmate will use
that PAC for the duration of his or her incarceration in any
federal institution where ITS-II is implemented.  A new PAC will
be given to an inmate at no cost to the inmate if, due to staff
negligence, a PAC is compromised.

PS 5264.07
1/31/2002
Page 14

[d. **Placement and Duration of Telephone Call.** The placement and duration of any telephone call is subject to availability of inmate funds. Ordinarily, an inmate who has sufficient funds is allowed at least three minutes for a telephone call. The Warden may limit the maximum length of telephone calling based on the situation at that institution (e.g., institution population or usage demand).]

(1) **Limitations on Inmate Telephone Calls.** The Warden will establish the maximum length of telephone calls, ordinarily 15 minutes. This applies to both debit and collect telephone calls.

The Warden determines the time schedule for the transfer of funds to ITS-II from an inmate's commissary account, and the interval waiting period between completed telephone calls.

Inmates with ITS-II accounts are limited to 300 minutes per calendar month. This applies to all inmates with an ITS-II account in Bureau institutions, and may be used for any combination of collect or direct-dial calls at the inmate's discretion. This limitation will help protect the security and good order of Bureau institutions.

Inmates who exhaust their 300 minutes limitation may be provided, at the Warden's discretion, a telephone call for good cause, and, ordinarily, will bear the telephone call's cost. The 300 minutes per calendar month limitation does not affect an inmate's ability to place unmonitored legal telephone calls.

(2) **Hours of Telephone Operation.** The hours of the inmate telephone operation begin at 6:00 AM and will end no later than 11:30 PM. From at least 11:30 PM to 6:00 AM, inmate telephone access will not be available. Inmates' access to telephones will be limited during the following times, Monday through Friday, not including holidays:

> 7:30 AM until 10:30 AM
> 12:30 PM until after 4:00 PM count.

Inmates are expected to be at their work assignments and must not use the telephone during their work hours. For inmates who work varied work shifts, at local discretion, institutions may leave one telephone per unit available for inmates on "days off," or "evening shift" such as food service workers, UNICOR workers, etc. Staff are encouraged to take disciplinary action if an inmate leaves his or her work assignment to place telephone

PS 5264.07
1/31/2002
Page 15

calls without the appropriate institution staff member's prior approval.

These restrictions should not be imposed in Pretrial institutions or Pretrial Units where inmates are not required to work and generally have more need for telephone access during the day to prepare for trial. However, as indicated in Section 7.a. of this Program Statement, phone calls by pretrial inmates should be closely monitored.

The placement and duration of any direct telephone call, including calls to a foreign country, are subject to the availability of inmate funds. A warning tone should be provided approximately one minute before the call is disconnected.

[e. Exception. The Warden may allow the placement of collect calls for good cause. Examples of good cause include, but are not limited to, inmates who are new arrivals to the institution, including new commitments and transfers; inmates confined at Metropolitan Correctional Centers, Metropolitan Detention Centers, or Federal Detention Centers; pretrial inmates; inmates in holdover status; inmates who are without funds (see § 540.105(b)); and in cases of family emergencies.]

§ 540.105(b) refers to Section 14.b. of this Program Statement.

The calls outlined in Section [e.] above, will be placed through the inmate telephone system, except as set forth in Section 10.[e.](3) below. All other exceptions, excluding those set forth in Section 14.[c.] of this Program Statement, must be approved by the Warden.

Ordinarily, the following provisions apply with respect to placing collect calls for:

(1) Inmates with ITS-II accounts may make up to 300 minutes per calendar month of collect calls (Collect Calling Option). However, the Bureau is not required to provide the Collect Calling Option to inmates who are detained in SHUs, Control Units, or Protective Custody Units, as specified in the Program Statement on Inmate Discipline and Special Housing Units, and the Program Statement Protective Custody Unit Manual.

(2) A Warden may choose to allow more collect calling for inmates at Metropolitan Correctional Centers, Metropolitan Detention Centers, Federal Detention Centers, for pre-trial

PS 5264.07
1/31/2002
Page 16

inmates, and inmates in holdover status as a matter of routine
procedure.

    (3)  Special collect calling arrangements should be made for
new arrivals, that is, transfers and new commitments, to allow
for the inmate to make a collect call when an account can not be
created expeditiously, i.e., weekends, holidays, etc.

   f.  Complaints.  As with other complaints regarding any
correctional issue, an inmate may use procedures outlined in the
Program Statement on the Administrative Remedy Program to resolve
disputes concerning their telephone privileges, e.g. lists,
access, accounts, and services.

    Pursuant to the settlement in Washington v. Reno, special
grievance procedures apply to administrative remedies relating to
telephone billing problems and telephone service problems for
which the inmate seeks recredit to his or her telephone account,
(e.g., an opportunity to appeal within 120 days from the date of
a disputed telephone charge).

11.  [MONITORING OF INMATE TELEPHONE CALLS § 540.102.  The Warden
shall establish procedures that enable monitoring of telephone
conversations on any telephone located within the institution,
said monitoring to be done to preserve the security and orderly
management of the institution and to protect the public.  The
Warden must provide notice to the inmate of the potential for
monitoring.  Staff may not monitor an inmate's properly placed
call to an attorney. The Warden shall notify an inmate of the
proper procedures to have an unmonitored telephone conversation
with an attorney.]

This Section's provisions apply only to inmate telephone calls.

The notification to inmates is to be documented in the record
using the Acknowledgment of Inmate form (BP-408).  As part of the
admission and orientation process, inmates are also to be advised
of the procedures for placing unmonitored telephone calls.

In addition, a notice is to be placed, in both Spanish and
English, at all monitored telephone locations within the
institution advising the user that all conversations from that
telephone are subject to monitoring and that using the telephone
constitutes consent to this monitoring.  The notice is to advise
inmates to contact their unit teams to request unmonitored
attorney telephone calls.

PS 5264.07
1/31/2002
Page 17

The SIS must ensure that the notice is at all monitored telephone
locations within the institution.  Requests for information
(e.g., subpoenas) on monitored calls are to be directed to the
Regional Counsel.  The Bureau does not allow inmates to send or
receive facsimile communications.

12.  [INMATE TELEPHONE CALLS TO ATTORNEYS § 540.103.  The Warden
may not apply frequency limitations on inmate telephone calls to
attorneys when the inmate demonstrates that communication with
attorneys by correspondence, visiting, or normal telephone use is
not adequate.]

The Bureau provides each inmate with several methods to maintain
confidential contact with his or her attorney.  For example:

- inmate-attorney correspondence is covered under the special
  mail provisions;
- private inmate-attorney visits are provided; and
- the inmate is afforded the opportunity to place an
  occasional unmonitored call to his or her attorney.

Based on these provisions, frequent confidential inmate-attorney
calls should be allowed only when an inmate demonstrates that
communication with his or her attorney by other means is not
adequate.  For example, when the inmate or the inmate's attorney
can demonstrate an imminent court deadline (see the Program
Statements on Inmate Correspondence and Inmate Legal Activities).
Staff are to ensure that the unmonitored calls they place on an
inmate's behalf are to an attorney.  Inmates are responsible for
the expense of unmonitored attorney telephone calls.  Third-party
calls are not authorized.

13.  [RESPONSIBILITY FOR INMATE MISUSE OF TELEPHONES § 540.104.
The inmate is responsible for any misuse of the telephone.  The
Warden shall refer incidents of unlawful inmate telephone use to
law enforcement authorities.  The Warden shall advise an inmate
that violation of the institution's telephone regulations may
result in institutional disciplinary action (See part 541,
subpart B)].

Part 541, subpart B refers to the Program Statement on Inmate
Discipline and Special Housing Units.

The Bureau, including its institutions, will not assume
responsibility for any calls that violate applicable statutes.

PS 5264.07
1/31/2002
Page 18

As used in this section, the term "misuse" refers to such situations as using the telephone to:

- intimidate a potential witness,
- perpetuate a fraud, or
- conduct any other criminal activity.

This also includes using another inmate's PAC, or providing a PAC to another inmate.

Telephone privileges are afforded to inmates who demonstrate an ability to exercise these privileges responsibly. Evidence that an inmate is violating the telephone use privilege may cause the individual to be placed on the restricted telephone use list for such time as the DHO or UDC deems appropriate, or the Warden deems appropriate. Specific instructions must be given during the orientation period and thereafter to help inmates understand their responsibilities for telephone use.

14. [EXPENSES OF INMATE TELEPHONE USE §540.105.

   a. An inmate is responsible for the expenses of inmate telephone use. Such expenses may include a fee for replacement of an inmate's telephone access code that is used in an institution which has implemented debit billing for inmate calls. Each inmate is responsible for staying aware of his or her account balance through the automated process provided by the system. Third party billing and electronic transfer of a call to a third party are prohibited.]

   The Trust Fund Branch is to establish a fee, not greater than the replacement cost, for replacing an inmate's PAC.

   In accord with the court-approved settlement in Washington v. Reno and while this settlement remains in effect, a written report of telephone charges is available for any 30-day period within the past 120 days upon payment of a fee of $3.00 for each 30-day period. This fee is to be waived for inmates without funds, as defined in subsection b. of this Section, or if staff determine it would impose an undue financial hardship on the inmate. This fee is to be reimbursable if the inmate's concern about the charge results in a subsequent recredit.

   Unit staff are to provide inmates with a Request for Withdrawal of Inmate's Personal Funds form (BP-199) to authorize the payment of the $3.00 charge for obtaining the written statements. Staff

PS 5264.07
1/31/2002
Page 19

must advise inmates to write on the BP-199 the specific 30-day
period for which he or she wants a telephone account statement.
The $3.00 charge is to be authorized for each 30-day period,
e.g., $6.00 should be authorized for a 60-day statement.

If the inmate requests an account statement to question a
charge to the inmate's telephone account, or to report a
telephone service problem for which the inmate seeks recredit,
and the inmate's request for recredit is determined subsequently
to be appropriate, Trust Fund staff are to make the appropriate
credits to the inmate's account, including reimbursement for the
$3.00/30 days charge.

For this Program Statement's purposes, a "telephone service"
problem means a poor telephone connection, static, or other
technical problems that has the actual effect of substantially
interfering with communication.  Procedures for processing these
credits are contained in the Trust Fund Manual.

Consistent with Bureau's correctional management objectives,
and except as noted in this Program Statement, an inmate may not
place calls to telephone numbers for which all the actual
expenses for the call cannot be deducted directly and immediately
from the inmate's account.  Examples include telephone calls to
1-800, 1-888, 1-900, 1-976, or to credit card access numbers.

To ensure the Trust Fund's continued financial integrity and
for institution security purposes, inmates must place all
personal telephone calls over the Trust Fund's ITS-II and must
not circumvent the ITS-II via call forwarding, including
automatic electronic forwarding or any other type.

[b.  The Warden shall provide at least one collect call each
month for an inmate who is without funds.  An inmate without
funds is defined as an inmate who has not had a trust fund
account balance of $6.00 for the past 30 days.  The Warden may
increase the number of collect calls based upon local institution
conditions (e.g., institution population, staff resources, and
usage demand).  To prevent abuses of this provision (e.g., inmate
shows a pattern of depleting his or her commissary funds prior to
placing collect calls), the Warden may impose restrictions on the
provisions of this paragraph b.]

The period for determining a trust fund account balance is the
30 days immediately preceding determination that an inmate is

PS 5264.07
1/31/2002
Page 20

without funds.  The $6.00 figure was selected as it is above the
maintenance pay level.

   Staff are to give to any inmate who claims to meet the criteria
as defined in Section 14.b., an Inmate Request to Staff form
(BP-148), to apply for the privilege of receiving collect calling
capability for the month.  The Unit Manager should process an
inmate's request for this collect call privilege within five work
days of receipt.  An inmate without funds must reapply for the
collect call privilege each month thereafter, and upon transfer
to a new institution.  The collect call(s) referenced above must
be made through the inmate telephone system.

   If approved for collect calling, this privilege must be used
during the calendar month and at the institution where the inmate
received it.  The Unit Manager is responsible for monitoring
compliance to prevent abuse and for notifying the Warden of
perceived abuse.  An example of abuse is an inmate who, on at
least two occasions over the past six months, has shown a pattern
of depleting his or her trust fund account to secure a special
collect call privilege, and then replenishing the account.

   When the Warden determines that the inmate is abusing this
provision, the Warden should hold the inmate accountable by
imposing a restriction on this privilege; i.e., reducing the
amount of collect calling time.  However, the Warden must permit
a minimum of one call per month unless the inmate has been
restricted from telephone use as the result of a specific
institutional disciplinary sanction.  The Warden's authority
under this section may not be delegated below the Acting
Associate Warden level.

   The unit team must notify Trust Fund staff of the approved
requests by inmates for this collect call privilege, and
specific restrictions imposed for abusing this provision.  These
procedures apply to all institutions.

   [c.  The Warden may direct the government to bear the expense
of inmate telephone use or allow a call to be made collect under

PS 5264.07
1/31/2002
Page 21

compelling circumstances such as when an inmate has lost contact
with his family or has a family emergency.]

A call under this subsection may be made to a number not on the
inmate's telephone list.

d.  Staff will not place collect telephone calls to foreign
countries for inmates.

15.  INSTITUTION SUPPLEMENT.  At a minimum, and where applicable
each Institution Supplement is to include information concerning
the following:

a.  The maximum length of telephone calls, ordinarily 15
minutes.

b.  The Warden will establish time frames for time required
between completed calls and hours of fund transfers.

c.  At the Warden's discretion, outline procedures to leave one
telephone per unit available for inmates on "days off" or
"evening shift," for inmates in the unit during the usual working
hours.

d.  At the Warden's discretion, outline procedures for
addressing inmates who exhaust their 300 minutes per calendar
month limitation to be provided a telephone call for a good
cause.

e.  Outline procedures for addressing those situations when a
collect call may be made for a good cause, including procedures
for Pretrial and Holdover inmates.

f.  Include information on using the PAC and what to do if the
PAC is lost or stolen.

The institution will involve the Regional Correctional Programs
Administrator in developing the Institution Supplement.  A copy
is to be forwarded to the Office of the General Counsel,
Attention:  Litigation Branch for review.  The Warden will
distribute the final Institution Supplement to staff and inmates.

/s/

PS 5264.07
1/31/2002
Page 22

**Kathleen Hawk Sawyer**
**Director**